UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA, ex rel:
SNAPP, Inc., f/k/a Dearborn
Systems Services, Inc.,

    Plaintiff,

v.                                                        Case No. 06-11848

FORD MOTOR COMPANY,            HONORABLE AVERN COHN

    Defendant.

_____/

## ORDER GRANTING IN PART FORD'S MOTION TO DISMISS
## AND
## DIRECTING SNAPP TO FILE AN AMENDED COMPLAINT
## WITHIN TWENTY (20) DAYS

I. Introduction

This is a <u>Qui Tam</u> action brought by SNAPP, Inc. (SNAPP) against Ford Motor Company (Ford) generally claiming that Ford made false claims or statements beginning in 1991 and continuing through 1999, in violation of the False Claims Act, 31 U.S.C. § 3729 (FCA).

Before the Court is Ford's motion to dismiss the complaint on the grounds that the allegations fail to meet the pleading requirements under Fed. R. Civ. P. 9(b). Ford also asks for an order finding that SNAPP's claims under the FCA predating April 30, 1997 are barred by the six year statute of limitations or, if the Court finds the tolling provision under the FCA applies, that claims predating April 30, 1993 are barred by the statute of limitations. For the reasons that follow, the motion is GRANTED IN PART.

Claims prior to April 30, 1997 are barred by the statute of limitations. SNAPP shall file an amended complaint within twenty (20) days in compliance with Rule 9(b). Ford may renew its motion to dismiss under Rule 9(b) following receipt of SNAPP's amended complaint.

## II. Background

On April 30, 2003, SNAPP filed the instant Qui Tam complaint in the Southern District of Ohio[1] against Ford claiming violations of the FCA. On July 19, 2004, the government notified the district court that it declined to intervene and the district court unsealed the complaint and ordered that it be served on Ford. Over the next year and a half, the district court issued two more orders directing SNAPP to serve Ford with the complaint or explain its failure to prosecute. Finally, on January 26, 2006, the district court issued a fourth order to show case as to why service could not be obtained. On February 10, 2006, SNAPP finally served Ford with the complaint.[2]

On March 2, 2006, Ford filed a motion to dismiss on the grounds of failure of SNAPP to timely serve Ford. On April 14, 2006, the parties stipulated to a transfer to this district. The case was received and docketed as case no. 06-11848 and assigned to another judge on April 19, 2006. Thereafter, on June 9, 2006, the case was

---

[1]It is not clear why SNAPP filed in the Southern District of Ohio. Although the complaint says that venue is appropriate in the Southern District of Ohio because "Ford, during the relevant periods, resided, transacted business, and can be found in" the district, Ford is a Delaware corporation with its principle place of business in Dearborn, Michigan, located in this district. Moreover, SNAPP is a Delaware corporation "with offices... in Beaumont, Texas."

[2]The delay in serving Ford is not explained.

reassigned to the Court as a companion to case no. 03-74357.³ At the time of the reassignment, Ford had already filed the instant motion to dismiss and motion to consolidate.

III. Motion to Dismiss

A. Legal Standard

A Fed. R. Civ. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 319 (6th Cir. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

While Fed. R. Civ. P. 8 calls for a "short and plain statement" of a claim, Fed. R.

---

³In a footnote to its response to Ford's motion to consolidate, SNAPP says that Ford recently lost a high profile case before the district judge to whom the Qui Tam action was originally assigned, Leach v. Ford Motor Co., Case No. 03-74625 in which a former Ford executive sued Ford alleging tortious interference with business expectations and Ford filed counter-complaint alleging breach of contract and violation of Uniform Trade Secrets Act. To the extent that SNAPP is saying that Ford had an improper motive in having the Qui Tam action reassigned to the Court as a companion to the business dispute, it is sorely mistaken. The decision of whether cases are companion under Local Rule 83.11 is made by the judges, not any party. The fact that Ford alerted the judge to whom the case was originally assigned that the Qui Tam action was a possible companion case to the business dispute had no bearing on the reassignment.

Civ. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A fraud claim should specify the following details:

> the parties and the participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the time, place and content of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the fraud.

Id.; see also Coffey v. Foamex L.P., 2 F.3d 157, 161-62 (6th Cir. 1993).

When deciding a motion to dismiss under Rule 9(b) for failure to plead fraud with particularity, a court must also consider the policy favoring simplicity in pleading, codified in the "short and plain statement of the claim" requirement of Federal Rule of Civil Procedure 8. "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony." Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988). On the other hand, a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions. Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006).

## B. Analysis

### 1. The Statute of Limitations

As an initial matter, SNAPP argues that Ford waived its service of process defense and therefore "the statute of limitations would be tolled by the pendency of this case." This argument is not understood. As Ford points out, while Ford agreed to waive any defect in service when the Qui Tam action was transferred to this district, a waiver of service has no bearing on a statute of limitations defense.

4

The Court will first address Ford's statute of limitations argument.

The FCA, 31 U.S.C. §§ 3729 et seq., makes illegal the submission of false or fraudulent claims to the federal government. The so-called "Qui Tam" provision in § 3730(b) authorizes private individuals to sue on behalf of the government in order to aid in ferreting out abuses, thereby "unleashing a posse of ad hoc deputies to uncover and prosecute frauds against the government." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citations and internal quotation marks omitted).

The FCA's statute of limitations provides:

A civil action under section 3730 may not be brought-

(1) more than 6 years after the date on which the violation of Section 3729 is committed, or
(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C. § 3731(b). While § 3731(b)(1) sets forth a six year statute of limitations, § 3731(b)(2) sets for a "tolling provision" and allows for no more than a 10 year statute of limitations. Ford, however, argues that § 3731(b)(2) only applies to claims asserted by the government and therefore as to claims asserted solely by a relator, i.e. SNAPP, the six year limitation applies. SNAPP argues that § 3731(b)(2) applies.

There is a split of authority among the circuits as to whether the tolling provisions of § 3731(b)(2) apply to claims of a relator in a Qui Tam action under the FCA. The first approach is illustrated by the Court of Appeals for the Ninth Circuit's opinion in United States ex. rel. Hyatt v. Northrop Corp., 91 F.3d 1211 (9th Cir. 1996) and the second approach is illustrated by the district courts' decisions in United States ex. rel.

5

Thistlethwaite v. Dowty Woodville Polymer, Ltd., 6 F. Supp. 2d 263 (S.D.N.Y. 1998) and United States ex rel El Amin v. George Washington Univ., 26 F. Supp. 2d 162, 171 (D.C.C. 1998).

In Hyatt, the Ninth Circuit found that 31 U.S.C. § 3731(b)(2) applied to a suit brought solely by a Qui Tam relator, reversing the district court's decision to the contrary. Hyatt, 91 F.3d at 1214-16. Nevertheless, the Ninth Circuit held that the applicable statute of limitations was six years, not ten years, because the relator in that case did not file suit within three years of when he knew or should have known of the alleged violations and thus violated subsection (b)(2)'s three year knowledge prong. See id. at 1217-18. The Ninth Circuit rejected the argument that in applying subsection (b)(2) to a suit by a Qui Tam relator, the knowledge prong of subsection (b)(2) only refers to the knowledge of the government. See id. at 1218 ("If he [plaintiff] accepts the benefits of the tolling statute, he must be subject to its restrictions").

In Thistlethwaite, the district court for the Southern District of New York considered the Ninth Circuit's interpretation of Section 3731 and rejected it. Instead, the district court held that 31 U.S.C. § 3731(b)(2) only applies to the government, not a Qui Tam relator. In El Amin, the district court for the District of Columbia discussed the conflicting authority in detail and concluded that the approach in Thistlethwaite was correct. The district court cogently explained:

> ... the Court concludes that even if it agreed with plaintiffs' argument that 31 U.S.C. § 3731(b)(2) applies to an action taken solely by a qui tam relator, the Court would still reject plaintiffs' contention that a 10-year limit applies in this case. Under the Ninth Circuit's own logic, the relators in this case would be subject to the six year, not the ten year, statute of limitations. The 10-year limitation was meant to act as the maximum possible statute of limitations under the FCA and plaintiffs' argument would convert that maximum into the default

6

> rule. Contrary to the relators' assertions, the Court concludes that it is the relators' argument, not the defendant's argument, which confuses theories and tries to embark on an illogical path between the two dominant approaches adopted by federal courts.
>
> ... the Court is not convinced that the position adopted by the Ninth Circuit is meritorious. The plain language of the statute implies that 31 U.S.C. § 3731(b)(2) only applies to an action in which the government decides to intervene. The position taken by the Ninth Circuit requires some unusual interpretations when applied to a qui tam relator, such as interpreting the words "official of the United States charged with responsibility to act in the circumstances," 31 U.S.C. § 3731(b)(2), to refer to a non government official, the qui tam relator. See Hyatt v. Northrop Corp., 883 F. Supp. 484, 486-88 (C.D. Cal. 1995), aff'd on other grounds, 91 F.3d 1211 (9th Cir. 1996). Instead, the Court is persuaded by the decision in United States ex. rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd., 6 F. Supp. 2d 263 (S.D.N.Y. 1998)...
>
>     The plain meaning of the statute supports the conclusion that the three year knowledge requirement contained in 31 U.S.C. § 3731(b)(2) only applies to cases in which the government intervenes. The subsection creating the three year tolling provision and the ten year limit makes no mention of the qui tam relator and refers to an "official of the United States." See 31 U.S.C. § 3731(b)(2). This indicates that subsection (b)(2) was not intended to apply to a qui tam relator. Moreover, the 1986 Amendment's legislative history indicates that Congress was concerned about the government not being able to bring an FCA cause of action because of difficulties in detecting fraud. See H.R. rep. No. 99-660, at 25 (1986); S.Rep. No. 99-345, at 15 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5280. Under the relators theory, the government's knowledge of fraud and its ability to bring suit would be unaided by the 1986 Amendment. Instead, the position advanced by relators in this case would allow future qui tam relators to allow false claims to build up, to the detriment of the government, and thereby obtain a larger recovery by sitting on their hands until the end of the ten year period. The Court thinks this approach unwise and unsupported by the case law or the statutory provisions.
>
>     In conclusion, it is the Court's considered judgment that the applicable statute of limitations is 6 years.

El Amin, 26 F. Supp. 2d at 172-73 (internal footnotes omitted).

The Court agrees with the district courts in Thistlethwaite and in El Amin. The plain language of the statute makes clear that the statute of limitations is six years for a Qui Tam action. Section (b)(2) only applies to claims by the government. Although the Court of Appeals for the Sixth Circuit has not directly decided the issue, they have

7

approved of this approach, at least by implication.  In Sanderson v. HCA - The Healthcare Co., 447 F.3d 873 (6th Cir. 2006), the district court dismissed the complaint on the grounds that it failed to meet the pleading standards for allegations of fraud under Rule 9(b), that it failed to state a cause of action under Rule 12(b)(6), and that it was filed <u>outside the applicable six-year statute of limitations</u>.  The Sixth Circuit found that the complaint was subject to dismissal under Rule 9(b).  As to the statue of limitations argument, the Sixth Circuit stated:

> We conclude that the district court was likewise correct in determining that the complaint was not timely filed ... [as a ground] for dismissal under Rule 12(b)(6). Because the basis for the Rule 9(b) determination is so clearly indicated, however, we find it unnecessary to discuss the remaining issues raised under Rule 12(b)(6).

Sanderson, 447 F.3d at 879.  While the Sixth Circuit did not decide the statute of limitations issue, they did not expressly disapprove of the district court's holding.  In any event, the Court is satisfied that the applicable statute of limitations is six years. Accordingly, any and all claims pre-dating April 30, 1997 (six years prior to the filing of the complaint) are barred by the statute of limitations.

### 2. Rule 9(b) Requirements

Ford says that while SNAPP generally asserts that Ford was required to file certification documents to the government regarding its use of minority contractors and that the subcontracting plans Ford filed were false, the <u>Qui Tam</u> complaint is devoid of any reference to the <u>individuals</u> that allegedly submitted the false subcontracting plans to the government.  Ford admits that SNAPP identifies the subcontract plans and the SF 295 forms which it claims Ford fraudulently submitted, but provides no information when such plans or forms were submitted.  These allegations, Ford says, do not reveal the

8

"who, what, where, when, and how" of SNAPP's false claims allegations. The Qui Tam complaint also fails to identify any payments which were received by Ford of account of its allegedly false submissions.

In response, SNAPP says that Ford does not cite any authority for its argument that SNAPP must identify the individuals who signed the forms. What is required is that SNAPP identify the "parties and the participants" which it did - it identified Ford. Also, the individuals signing the forms on behalf of Ford, not themselves. SNAPP also says that it properly plead "when" the events happened as the Qui Tam complaint alleges that the violations arise from "Ford's "annual submission" to the government, i.e. Ford submitted false claims every year, from 1991 through 1999. Finally, SNAPP says that to the extent the Court finds the complaint inadequate, it asks to file an Amended Complaint to list the dates in which Ford signed the SF-295 forms and subcontracting plans.

SNAPP is correct that the Qui Tam complaint sufficiently pleads the "who" (Ford) and the "when" (on an annual basis), however, SNAPP fails to address Ford argument that it has not adequately plead the payments made to Ford by the government on account of Ford's allegedly false annual supplier submissions or what government contracts are involved - the "where, how and what" requirements. At best, SNAPP appears to say that some discovery is needed in order to allow it to provide specific examples of payments.[4]

---

[4] Without researching the issue, it seems to the Court that filing a deficient complaint under Rule 9(b) and then asking for discovery in order to bring it into compliance with Rule 9(b) vitiates the purpose of the rule.

9

The Qui Tam complaint contains the following allegations regarding payments:

- •        ...As a prerequisite for being awarded government contracts and receiving payment from the Government, these provisions mandate that Ford comply with the "Utilization of Small Business Concerns" clause set forth in 15 U.S.C. § 637(d)... Qui Tam complaint at ¶ 10.

- •        In order to induce the United States to enter into contracts with it and to make payments to it, Ford has since at least 1991 been knowingly or recklessly submitting to the United States claims that Ford knew were false and/or otherwise ineligible for payment... Qui Tam complaint at ¶ 12

- •        Plaintiff, the United States, unaware of the foregoing false statements of Ford, and in reasonable reliance on the accuracy of Ford's Representations, granted Ford "Prime Contractor Status" and made payments to Ford that the United States otherwise would not have paid. Qui Tam complaint at ¶ 51

- •        By virtue of the acts described above, Ford made, used or caused to be made, or used, false records or statements to get false and fraudulent claims allowed and paid. Qui Tam complaint at ¶ 54

- •        The United States, unaware of the falsity of the records and/or statements made, used or caused to be made or used by Ford, and in reasonable reliance on the accuracy thereof, granted Ford "Prime Contractor" status, awarded Ford substantial government contracts, and made substantial payments to Ford that the United States otherwise would not have paid. Qui Tam complaint at ¶ 56.

These allegations are too broad. SNAPP must do more than recite conclusory allegations of Ford's allegedly fraudulent billing practices leading to "payments" by the government which it would not otherwise have made. The complaint contains no allegations as to which claims submitted by Ford would not have been paid or which payments it would not have made. SNAPP has not identified any government contract that Ford allegedly received as a result of being qualified as a "Prime Contractor" or a single payment made by the government to Ford because of its "Prime Contractor" status. The complaint as it stands does not meet Rule 9(b)'s requirements.

The question becomes whether to dismiss the complaint as it stands or afford

SNAPP an opportunity to amend in order to conform with Rule 9(b). At the hearing, counsel for Ford stated emphatically that amendment is not permitted, i.e. that the plaintiff gets only a single opportunity to plead its allegations with particularity and if it fails, the complaint must be dismissed with no right to amend. In support, counsel cited the following cases: United States ex rel. Clausen v. Laboratory Corp. of America, 290 F.3d 1301 (11th Cir. 2002); Yuhasz v. Brush Wellman, Inc., 341 F.3d 559 (6th Cir. 2003); and Sanderson v. HCA - The Healthcare Co., 447 F.3d 873 (6th Cir. 2006). Counsel's statement is a gross mischaracterization of the holdings in these cases. Indeed, these cases show exactly the opposite - that amendment is permitted.

In Clausen, defendant filed a motion to dismiss plaintiff's First Amended Complaint under Rule 9(b). Counts I, and II of the First Amended Complaint[5] claimed violations of the FCA. The district court granted the motion as to Count I but allowed plaintiff "to amend his complaint and attempt to come into compliance with the rule." 290 F.3d at 1305. The district court also declined to rule on Count II prior to the filing of a Second Amended Complaint. See id. at n.8. After plaintiff filed a Second Amended Complaint, which deleted Count II and sought to respond to the district court's concerns with Count I, defendant filed a motion to dismiss the Second Amended Complaint. The district court held that the Second Amended Complaint still failed to comply with Rule 9(b) and therefore dismissed it. Plaintiff appealed and the Court of Appeals for the Eleventh Circuit affirmed the dismissal.

In Yuhasz, plaintiff alleged that defendant violated the FCA. Defendant moved to

---

[5]Plaintiff amended his complaint prior to it being unsealed and served on defendant. The First Amended Complaint was served on defendant.

dismiss under Rule 9(b). Plaintiff requested leave to amend the complaint in his response to the motion. The district court denied his request and granted the motion to dismiss. The Sixth Circuit addressed the issue of the district court's failure to allow plaintiff to amend, noting that it was not an abuse of discretion because plaintiff was "free to file an amended complaint at any time prior to the district court's entry of judgment" and that in response to the motion to dismiss, plaintiff said that he "has plead all the facts that he knows," thus amendment would be futile. 341 F.3d at 569.

Finally, in Sanderson, plaintiff claimed defendant violated the FCA. Defendant moved to dismiss under Rule 9(b). After the motion was filed, plaintiff filed an amended complaint "purportedly to plead with more particularity," 447 F.3d at 875. The district court considered the amended complaint which, according to the Sixth Circuit, was "virtually unchanged from the original." Id. The district court dismissed the complaint and the Sixth Circuit affirmed.

These cases make clear that not only is a plaintiff permitted to amend the complaint to bring it into compliance with Rule 9(b) when faced with dismissal, it is wholly appropriate to allow amendment. Accordingly. SNAPP shall have 20 days in which to file and Amended Complaint. There shall be no discovery prior to filing. If it fails to cure the defects noted above, Ford may renew its request for dismissal.

SO ORDERED.

Dated: September 7, 2006
s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, September 7, 2006, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5160